WILLIAM W. CLAYTON vs. LUCY N. COBURN, EXECUTRIX.

A note payable four years after date, and endorsed by a third person as guaran-
tor, was made in this state, where all parties then resided, but before it fell
due the maker removed from the state and at its maturity was residing in the
state of New Jersey, and had funds in his hands for the payment of the note
The holder had been informed a year before that he lived in that state, but did
not know in what part of the state, nor whether he still lived there, nor that
he had any property that could be taken.  Held that, in determining whether
the holder had used due diligence to collect the note of the maker, the fact that
the latter lived out of the state was one of much importance, and that, while
it did not absolve him from all duty in the matter, he was yet holden to less
effort than he would have been if he had resided or had property in this state.
The importance of the fact of the residence of the maker out of the state will
vary with varying circumstances—such as distance, knowledge of the maker's
address, reasonable certainty of finding property, and the like.
Certain efforts of the holder of such a note to find the maker and to obtain pay-
ment, held under this rule to be sufficient.

ASSUMPSIT against the defendant as executrix of Alexander
O. Coburn, upon an endorsement by him in his life time of a
promissory note as guarantor; brought to the Court of Com-
mon Pleas of New Haven County.   The case was tried to the
court on the general issue.   The court found the following
facts:
   On the 7th of February, 1868, one James H. Coburn gave
the plaintiff the following note:
"$237$\frac{34}{100}$.                     New Haven, February 7th, 1868.
   "Four years after date I promise to pay to William N. Clay-
ton, or order, two hundred and thirty-seven $\frac{34}{100}$ dollars, with
interest from date, for value received.
                                   JAMES H. COBURN."
   This note was endorsed in blank "A. O. Coburn," being so
endorsed by the said Alexander O. Coburn.   All parties
resided at the time in the city of New Haven, in this state,
and A. O. Coburn continued to reside there until his death, on
the 28th of September, 1868.   His estate was solvent, and
the defendant is sole executrix, devisee and legatee.   The
claim in suit was presented against the estate, and this action
was brought within the time provided by statute.   After the

note in suit was made, James H. Coburn moved his family out of the state, and afterwards went west; and at the maturity of the note his residence was unknown to the plaintiff, except that about a year before its maturity the plaintiff was informed by James himself that he lived in New Jersey, and for aught that appeared to the contrary, the plaintiff could probably at any time, by inquiry of the defendant, or of the brothers of James, have ascertained his place of residence. On the day the note matured, February 10th, 1872, James lived in West Bergen, in the state of New Jersey, eleven miles from New York city, and was then, and for at least two weeks thereafter, able and willing to pay the note on presentation, with funds which he had provided and kept for that purpose at his house. He had no other property subject to attachment or execution in New Jersey, but he had with a banker in New York city funds sufficient to pay the note, and he would have paid it if it had been presented at any time within two weeks after its maturity. On the 12th of February, 1872, the plaintiff's agent presented the note to one of James's brothers in New Haven, by whom, acting therein for James, a prior note arising out of the same transaction, and similar in form and similarly indorsed, had been paid, and was then notified by the brother that James had left no funds with him to pay the note, but that he could be found at No. 200, Fulton street, New York city, at the office of James McGuire & Co. On the same day the plaintiff's agent placed the note in a bank at New Haven, which sent it to the First National Bank of New York city. The messenger of the First National Bank, on the 13th of February, 1872, called at No. 200, Fulton street, but could not find James, but left notice there for him, which was afterwards received. He thereupon returned the note to his bank, whence, on the 14th of February, 1872, it was sent to New Haven. On the same day, after it had been sent to New Haven, James called at the New York bank to pay the note. On the 14th the plaintiff's agent, by letter, notified the defendant that the note was unpaid and that the estate was holden, and on the 16th called on the defendant, who told him to go to the brother before mentioned, as he did all her business, and also

on the brother, by whom he was told that James lived in West Bergen, New Jersey. On the 17th he went to New York city, to No. 200, Fulton street, and was there informed that James had not been in business there since January, but came occasionally to write letters, and would probably be there that day; also, that he lived in West Bergen. The plaintiff's agent did not go to West Bergen, but sent a letter there by mail, which was never received by James, and after calling several times that day at No. 200, Fulton street, returned to New Haven. Shortly afterwards James learned of the visit of the plaintiff's agent. On the 19th of February, 1872, a suit was brought in Connecticut against James, garnisheeing his brother and the defendant, but the garnishee was found not indebted, and no property was found by the officer in his precincts to attach, and the action was dismissed for want of jurisdiction.

On the day of the maturity of the note James went to his former place of business, 143 Reade street, New York, and then to the National Park Bank, where he had formerly done business, for the purpose of paying the note. In the latter part of January, 1873, the plaintiff's agent first heard a rumor that James had returned to Connecticut, and was living in the town of Orange. He at once made inquiries to find out if such was the fact, and also where in Orange he was, if he was there at all; and upon learning that he was there and where he was, he at once, on the 6th of February, 1873, commenced another action against him, but no property was found. Judgment was obtained, which is wholly unpaid, and the execution has been returned unsatisfied. The plaintiff did not know, before the present action was brought, that James was able and willing to pay the note if the same had been presented to him in New York or New Jersey, or that he had funds therefor; nor did James, though he well knew the address of the plaintiff and that of his agent, who held the note for collection, communicate to either of them the fact of his ability or willingness to pay the note. James went out of business at No. 200, Fulton street, January 1st, 1872, and at the time when the note became due had no regular place of business, except at his house in West Bergen; and he had

made no arrangements to pay the note in Connecticut at any time, and had no property in Connecticut. The plaintiff has made no other attempt to collect the note, and the note and judgment thereon are still unpaid.

Upon these facts the case was reserved for the advice of this court.

*Pardee* and *Alling*, for the plaintiff.

*H. Stoddard*, for the defendant.

PARK, C. J. The contract of endorsement in this case was made within this state, where all the parties to the note resided at the time, and where presumably the note was payable, as nothing appears to the contrary. Under these circumstances the contract must be construed by the laws of this state. *Brockett* v. *Norton*, 4 Conn., 520 ; *Hale* v. *New Jersey Steam Navigation Co.*, 15 id., 539.

The contract implied by an endorsement like the present one has been so often before this court for consideration and has been so many times stated, that it is not necessary to explain it or cite authorities with regard to it. Indeed the only question made in the case is, whether the holder of the note exercised due diligence to collect it when it became due. Soon after the note was given the maker removed from this state, and about a year before the maturity of the note he informed the plaintiff that he was residing in the state of New Jersey. When the note matured the plaintiff had no other information with regard to his residence. He did not know whether he still resided in New Jersey, and, if so, at what place in the state he resided. But the case finds that the plaintiff could probably have ascertained the place of his residence if he had inquired of the defendant in New Haven in this state, or of the brothers of the maker who resided there at the time. The maker had no property in this state when the note fell due, and no agent here who attended to his affairs, and indeed he had no visible property in New Jersey at the time. Has then the plaintiff in these circumstances

done all his duty in the effort which he made to find the maker of the note, and obtain payment of it from him?

All that the law requires of the holder of such paper is that he use due diligence to collect the note, at its maturity, of the maker. It is of course more important to discover attachable property belonging to the maker than to find him personally. That property when found can ordinarily be secured, but the maker himself, while it is easy for him to elude the holder, may when found refuse to pay and have no property about him that can be taken. In the present case the plaintiff made all reasonable inquiry for property in this state, making demand upon the maker's brother for funds in his hands, the brother having attended to his business in some former transactions, and on the brother's denying that he had such funds, getting out soon after a factorizing writ, which he placed in the hands of an officer, who served it upon the brother and made search for other property to attach. The effort was fruitless and the plaintiff merely made himself expense. Thus far then the plaintiff had done all that he could within this state, and had done an important part of his whole duty in taking the steps which he did.

Not finding property within this state, (and it is found that there was none, so that any further search would have been fruitless,) the plaintiff's next natural and proper course was to search for the maker. He had resided within this state when the note was made. Not long after he had removed to the west, and the plaintiff knew nothing of his then residence beyond the fact that the maker himself, about a year before, had told him that he was then residing in the state of New Jersey. It is not found that the plaintiff knew that he was residing there, but only that the maker told him so. Of course this was notice to the plaintiff of the fact, and he is perhaps to be treated as if he knew the fact to be so. But this was a year before, and it gave the plaintiff no information as to the part of the state where he lived, and of course was no positive information as to his residence when the note fell due. The maker was evidently of a migratory disposition, while the indefiniteness of the information destroyed its practical value.

We start then with the fact that the maker probably lived somewhere in the state of New Jersey, and that he had relatives within this state, known to the plaintiff, from whom, it is now found, information as to the residence of the maker could have been obtained on enquiry, and with the further fact that the plaintiff had applied to the brother of the maker, who had formerly attended to some business of the latter with the plaintiff, and who denied having funds of the maker in his hands, but did not inform him where the maker lived, nor that he had the means of payment. Now in these circumstances what was the further duty of the plaintiff?

We will not very exactly measure what he actually did. He certainly made a great deal of effort to find the maker in the city of New York and to learn his address in New Jersey, as well as to collect the note through a New York bank; for we consider the fact of the maker's residing out of the state one which, in the circumstances, and at this point, comes in to turn the scale in the plaintiff's favor.

It is to be observed that if the plaintiff could have found the maker it does not follow at all that he could have obtained payment. We mean, that as the case lay in his mind, he could not have been sure of it, and indeed could not reasonably have expected it. The maker knew of course that the note had become due, and that it was his duty to provide funds for its payment here, and that the plaintiff would have great trouble in looking him up. He knew the plaintiff's residence and address, and could easily have remitted the funds to him, or to his brother as his agent, and could at any rate have written to him. In these circumstances his silence and neglect of payment might be reasonably interpreted by the plaintiff as an indisposition to pay, and he might reasonably have presumed that he would evade the debt if he was able. And while these circumstances would not excuse an abandonment of further effort if the maker had lived in this state, we can not but regard him as not equally bound to go into another state and avail himself of its laws and legal process, at a greatly increased cost in both money and personal trouble, expending perhaps a large part of the value of the note in

attempting, perhaps without avail, to collect it. We can not regard him as held by the law to the same extended search and enquiry for the maker that would reasonably be required of him if the maker were to be found in this state.

Upon this view of the case we regard the action of the plaintiff in the city of New York, and elsewhere out of this state, as in the circumstances all the diligence that the law required of him.

We do not wish to be understood as making the fact that a maker of such a note resides out of the state, a reason why the holder should be absolved from all duty in the matter, but only that that fact enters into the case as one of much practical importance, that importance varying with varying circumstances, of distance, of knowledge of the maker's residence, of reasonable certainty of success in finding property, and of anything else that may affect the practical value of any effort to collect the note made in such state; the duty of the holder as to measures to be taken within this state not being affected at all by the residence of the maker out of the state.

We advise judgment for the plaintiff.

In this opinion the other judges concurred; except PHELPS, J., who did not sit.